IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN THOMPSON, JR. | : | CIVIL ACTION |
| v. | : | |
| SUPT. LOUIS FOLINO, et al. | : | NO. 05-2688 |

### REPORT AND RECOMMENDATION

THOMAS J. RUETER                                                      April 17, 2007
United States Magistrate Judge

      Presently before the court is a <u>pro se</u> petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the State Correctional Institution at Waynesburg, Pennsylvania. Respondents filed a Reply on October 18, 2005 urging that the petition be dismissed as barred by the one-year statute of limitations applicable to habeas petitions. (Doc. No. 11.) On February 16, 2007, counsel was appointed to represent petitioner. Counsel filed a Brief in Opposition to Request that Petition for Writ of Habeas Corpus be Denied Without a Hearing Because Claims are Alleged to be Time-Barred. (Doc. No. 16.)[1] For the reasons stated below, this court recommends that the petition be dismissed as barred by the one-year statute of limitations.

### I.  BACKGROUND

      On February 6, 1980, a jury sitting in the Court of Common Pleas for Philadelphia County, convicted petitioner of the first degree murder of Claude Scott. (Phila. C.P. Nos. 1237 and 1239, July Term, 1979.) Petitioner was sentenced to life imprisonment. Petitioner appealed

---

[1] Petitioner filed a Brief in Support of Petition for Writ of Habeas Corpus with his petition on April 26, 2005.

to the Pennsylvania Superior Court which affirmed the judgment on July 27, 1984. Commonwealth v. Thompson, 479 A.2d 1149 (Pa. Super. Ct. 1984) (Table). The Pennsylvania Supreme Court denied allocatur on March 8, 1985. Commonwealth v. Thompson, No. 536 E.D. Alloc. Dkt. 1984.

On September 23, 1987, petitioner filed a pro se petition for collateral review under the Post Conviction Hearing Act ("PCHA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq. (repealed). Counsel was appointed and an amended petition was filed on June 30, 1988. The PCHA court dismissed that petition on May 17, 1994. Petitioner appealed this decision and the Superior Court of Pennsylvania affirmed on August 28, 1995. Commonwealth v. Thompson, 668 A.2d 1198 (Pa. Super. Ct. 1995) (Table). The Pennsylvania Supreme Court denied allocatur on February 16, 1996. Commonwealth v. Thompson, 674 A.2d 1071 (Pa. 1996) (Table).[2]

On February 6, 1997, petitioner filed a pro se petition for collateral review under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq. This was petitioner's second petition for state collateral review. On July 7, 1997, the PCRA court dismissed the petition as untimely. Petitioner filed an appeal to the Superior Court, which affirmed the dismissal of the PCRA petition on November 17, 1998. Commonwealth v. Thompson, 734 A.2d 441 (Pa. Super. Ct. 1998) (Table). A petition for allowance of appeal was denied by the Pennsylvania Supreme Court on April 27, 1999. Commonwealth v. Thompson, 737 A.2d 1225 (Pa. 1999) (Table).

---

[2]   In 1996, petitioner petitioned the Third Circuit Court of Appeals for permission to file a successive habeas petition. The court denied the petition on August 22, 1996. (C.A. No. 96-8041).

On January 25, 2001, petitioner filed a second PCRA petition, his third petition for collateral review, which was dismissed as untimely on May 15, 2003. On October 1, 2004, the Pennsylvania Superior Court affirmed dismissal of the petition. Commonwealth v. Thompson, 863 A.2d 1232 (Pa. Super. Ct. 2004) (Table). The Pennsylvania Supreme Court denied allocatur on February 24, 2005. Commonwealth v. Thompson, 868 A.2d 1200 (Pa. 2005) (Table).

On April 26, 2005, petitioner filed the instant pro se petition for a writ of habeas corpus raising several grounds for relief.[3] (Petition ¶ 12.) On October 18, 2006, the District Attorney for Philadelphia County responded to the petition arguing that the petition should be dismissed as untimely. (Doc. No. 11.)

## II.     DISCUSSION

A habeas petition must be filed in a timely manner. Title 28 U.S.C. § 2244(d), enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), creates a one-year time limit for filing a habeas corpus petition and in relevant part provides:

>   (1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>           (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>           (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

---

[3] On April 26, 2005, petitioner sought permission from the Third Circuit Court of Appeals to file a successive petition for a writ of habeas corpus. (C.A. No. 05-2399.) On June 5, 2005, the court held that petitioner did not need permission to file a habeas petition and transferred his application to the District Court with instruction to treat it as a habeas petition.

>> United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  See generally Fahy v. Horn, 240 F.3d 239 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Lovasz v. Vaughn, 134 F.3d 146 (3d Cir. 1998).

      For the purposes of Section 2244(d)(1)(A), petitioner's conviction became final on June 6, 1985 when the time for seeking certiorari in the United States Supreme Court expired. See Sup. Ct. R. 13; Kapral v. United States, 166 F.3d 565, 570 (3d Cir. 1999) (a judgment does not become "final" until the time for seeking certiorari review expires, even if defendant does not file such a petition).  Because the conviction became final before the April 24, 1996 effective date of the AEDPA, petitioner was granted a one-year grace period, or until April 23, 1997, to seek federal habeas review.  See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). Accordingly, petitioner had until April 23, 1997 to file a timely federal habeas petition unless the deadline was subject to statutory or equitable tolling.

4

### A.     Statutory Tolling

The one-year statute of limitations is tolled during the time petitioner had pending in the state courts a properly filed PCRA petition. See 28 U.S.C. § 2244(d)(2) (providing that the time during which a "properly filed" petition for collateral relief is pending is not counted toward the one-year statute of limitations). Petitioner's first petition, filed pursuant to the PCHA, was filed on September 23, 1987 and dismissed on May 17, 1994. Since this petition was dismissed before the AEDPA effective date and before the statute of limitations began to run, it does not toll the statute of limitations.

Petitioner's second petition, pursuant to the PCRA, was filed on February 6, 1997, during the one-year AEDPA grace period. The Pennsylvania courts found that this petition was untimely. Case law is clear that an untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2254(d)(2)."). See also Merritt v. Blaine, 326 F.3d 157, 167-68 (3d Cir.), cert. denied, 540 U.S. 921 (2003) (same); Fahy, 240 F.3d at 243-44 (same).

Petitioner's third petition for collateral review, filed on January 25, 2001, also was dismissed as untimely, so it did not toll the statute of limitations. Moreover, it was filed more than three and one-half years after the statute of limitations expired and could not serve to toll a statute of limitations that had already expired.

Petitioner's petition for a writ of habeas corpus had to be filed by April 23, 1997 in order to be timely. The instant petition was filed on April 26, 2005, more than eight years

after the AEDPA statute of limitations had expired. The statutory tolling provisions of the AEDPA do not render petitioner's petition timely and the petition should be dismissed.[4]

### B. Equitable Tolling

The Third Circuit has held that the federal habeas statute of limitations is subject to equitable tolling. See Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). In Miller, the court stated the following:

> [E]quitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur only when the petitioner has in some extraordinary way . . . been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient.

Id. at 618-19 (interior quotations and citations omitted). See Hornig v. Lavan, 197 Fed. Appx. 90, 93 (3d Cir. 2006) (same, quoting Miller) (not precedential). The Third Circuit Court of Appeals has cautioned that courts should use equitable tolling sparingly. LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005) (citations omitted). Equitable tolling may be found only when: (1) the state has actively misled the petitioner; (2) the petitioner has in some extraordinary way been prevented from asserting his rights; or (3) the petitioner has timely asserted his rights but in a wrong forum. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). In a non-capital case, such as the one now before the court, "attorney error, miscalculation, inadequate research, or other

---

[4] Petitioner's failure to comply with the statute of limitations is not excused by the prisoner "mailbox rule," which applies to all petitions filed by pro se inmates. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) ("pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court"). Petitioner executed and dated his petition on April 26, 2005, the same date the petition was filed with the court. Hence, application of the mailbox rule does not alter the fact that petitioner's instant habeas petition was filed in an untimely manner.

6

mistakes," do not constitute extraordinary circumstances required for equitable tolling. Fahy, 240 F.3d at 244.

Petitioner has not demonstrated that the Commonwealth of Pennsylvania misled him regarding the required date to file his federal habeas corpus petition. This is not a case where petitioner timely asserted his rights in the wrong forum. Rather, petitioner contends that equitable tolling should apply to his claims because

> of a malicious deception and blatant Brady violation by the State and/or its agents. The State actively misled the Petitioner and prevented him from asserting his constitutional rights by continuously misleading Petitioner about a .32 handgun that the State claimed to have found around the corner in a trash bin.

(Pet.'s Counseled Br. at 3.) Petitioner further alleges that:

> [T]he State later acknowledged that the .32 caliber was actually recovered from Petitioner's porch with another gun, that being a .357 magnum, the gun allegedly planted by Petitioner's stepfather, Jessie Cooper.
>
> . . . The Respondent "actively mislead [sic]" Petitioner for over 20 years about the exculpatory .32 caliber gun found at the scene. Moreover, once Petitioner obtained the confirmation that the .32 caliber was found at the scene, he has diligently investigated the circumstances to the extent he has been able and, later, as a result of this investigation, Petitioner discovered that the decedent's brother-in-law, Robert White, was an eye witness [sic].
>
> Petitioner immediately requested a PCRA Hearing to determine the relevance of this testimony, and later, while waiting for the PCRA Court to schedule a hearing, a private investigator located two additional eye witnesses; namely, Willie Burgess (the decedent's drug partner) and Eugene Matthews, who lived down the street.

Id. at 3-4 (footnote omitted).

Petitioner contends that he is entitled to equitable tolling of the AEDPA statute of limitations because he has discovered "new evidence" that allegedly supports his claim that he killed the victim in self-defense and, thus, is "actually innocent" of first-degree murder. (Pet.'s

Br. Supp. Pet. at 11-13.) Petitioner's "new evidence" consists of affidavits from two individuals, Willie Burgess and Robert White, each of whom claims that a second male was armed with a gun and standing on petitioner's porch with the victim at the time of the shooting.[5] Burgess states that he was the second male. Petitioner claims that this new evidence supports his claim of self-defense by showing that a second gun, a .32 caliber gun in addition to the .357 magnum, was found on the porch after the shooting. See Pet.'s Br. Supp. Pet. at 3, 13. Additionally, petitioner asserts that he is entitled to equitable tolling because the State actively misled him when the prosecution withheld from him evidence that the second gun was found on the porch, and not "around the corner in a trash bin." (Pet.'s Counseled Br. at 3.)

      1.     **<u>New Evidence and Actual Innocence</u>.** As explained above, petitioner contends that the three Affidavits are "new evidence" that allegedly supports his claim that he killed the victim in self-defense and, therefore, he is actually innocent of the crime of which he was convicted. Petitioner also contends that the discovery of a second gun on the porch after the shooting is "new evidence" suppressed by the prosecution.

      The Third Circuit Court of Appeals has not recognized an "actual innocence" exception to the AEDPA statute of limitations. See Hornig, 197 Fed. Appx. at 93 (court yet to hold that AEDPA statute of limitations can be equitably tolled on basis of actual innocence) (not

---

[5] Robert White's affidavit is dated December 19, 2000, and attached as Exhibit C to petitioner's Brief in Support of his Petition (the "White Affidavit"). The affidavit of Willie Burgess is dated September 17, 2002, and attached as Exhibit D to petitioner's Brief in Support of his Petition (the "Burgess Affidavit"). Petitioner's appointed counsel also identified a third affiant, Eugene Matthews, who executed an affidavit dated September 17, 2002 (the "Matthews Affidavit"). See Pet.'s Counseled Br. at Ex. E. Mr. Matthews stated in his Affidavit that on the morning of the incident, he observed two males walking up the steps onto petitioner's porch. He heard a loud noise and turned to see the victim "flopping around outside," and the second male running away. Id. This court has considered all three Affidavits.

precedential). See also Scott v. Lavan, 190 Fed. Appx. 196, 199 (3d Cir. 2006) (same) (not precedential), cert. denied, 2007 WL 506325 (U.S. Feb. 20, 2007); United States v. Crute, 169 Fed. Appx. 105, 108 (3d Cir. 2006) (same) (not precedential); Hussmann v. Vaughn, 67 Fed. Appx. 667, 669 (3d Cir.) (same) (not precedential), cert. denied, 540 U.S. 930 (2003); Gilyard v. Tennis, 2007 WL 201015, slip op. at *2 (E.D. Pa. Jan. 17, 2007) (same).  At least two courts of appeals have rejected such an exception.  See Escamilla v. Jungwirth, 426 F.3d 868, 872 (7th Cir. 2005) ("Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action."); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir.) (a claim of actual innocence would not constitute a "rare and exceptional" circumstance which would justify the equitable tolling of the limitations period, "given that many prisoners maintain they are innocent"), cert. denied, 531 U.S. 1035 (2000).[6]

       This court need not predict whether the Supreme Court or the Third Circuit Court of Appeals would adopt an actual innocence exception to the AEDPA statute of limitations.  In Schlup v. Delo, 513 U.S. 298, 324, 327 (1995), the Supreme Court explained that in order to establish "actual innocence" to be entitled to relief that otherwise would be barred, a petitioner must present "new reliable evidence . . . that was not presented at trial" showing that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a

---

[6] And see House v. Bell, 126 S. Ct. 2064, 2077 (2006) (actual innocence "standard is demanding and permits review only in the extraordinary case"); Garcia v. Portuondo, 334 F. Supp. 2d 446, 456, 462 (S.D. N.Y. 2004) (The district court noted that "[w]hether the United States Constitution requires an 'actual innocence' exception to the AEDPA one-year statute of limitations on federal habeas petitions is a novel question of constitutional law," but concluded that "the running of the AEDPA statute of limitations is equitably tolled in the exceedingly rare case in which the petitioner makes out a credible claim of actual innocence.").

9

reasonable doubt. Here, petitioner presents no "new reliable evidence" to meet this exacting standard.[7]

The "evidence" petitioner presents is not "new." The Affidavits are dated September 17, 2002 (the Burgess Affidavit and the Matthews Affidavit) and December 19, 2000 (the White Affidavit). The information at issue in the Affidavits is the existence of a second gun on the porch at the time of the shooting. This information was available to petitioner prior to the dates of the Affidavits and as early as his trial.

In petitioner's PCHA petition, his first petition for state collateral review filed in 1987, petitioner alleged that trial counsel was ineffective for failing to question witnesses at trial about a second gun "recovered on Appellant's porch," not at some other location. See Commonwealth v. Thompson, No. 02174 PHL 1994, slip op. at 5, 12 (Pa. Super. Ct. Aug. 28, 1995). The Superior Court of Pennsylvania found that this claim lacked merit and stated as follows:

> Secondly, Appellant contends that counsel was ineffective for failing to question trial witnesses regarding the presence of a second gun that was recovered on Appellant's porch. Appellant baldly asserts that trial counsel should have questioned witnesses about this second gun because the victim was allegedly known to carry two guns, and such questioning would have supported Appellant's theories of self-defense or voluntary manslaughter. At trial, however, Appellant testified that he had seen the victim reaching into a canvas bag and pulling out what appeared to be the handle of a gun. Therefore, the possession of a second weapon by the victim is irrelevant and would not have bolstered Appellant's claims of self-defense or voluntary manslaughter. Thus, Appellant's claim is without merit.

---

[7] The Court explained that an actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" Schlup, 513 U.S. at 315 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).

Id. at 12.  It is clear that at least as early as June 30, 1988, when counsel filed an amended PCHA petition, petitioner knew about a second gun recovered from the porch.  Id.  Moreover, since petitioner expected counsel to question witnesses at trial about a second gun recovered from the porch, it appears that petitioner knew as early as his trial in 1980 about the existence of a second gun recovered from the porch.

The Superior Court of Pennsylvania again considered this issue when petitioner appealed the dismissal of his third PCRA petition as untimely.  Commonwealth v. Thompson, No. 1679 EDA 2003, slip op. at 5-7 (Pa. Super. Ct. Oct. 1, 2004).  The court decided as follows:

> Specifically, Appellant claims that he has recently uncovered three new witnesses that essentially place a second gunman on his front porch on the morning in question, thus bolstering his claim of self-defense.  Appellant states that his family posted flyers in the neighborhood . . . in 1999.  As a result, one Robert White eventually came forward and signed an affidavit in which he asserts that at the time of the incident, he saw Scott and another male with guns in their hands, kicking in the door of Appellant's home.  Appellant failed to state when he first learned of White's information.  After Appellant filed his PCRA petition, two more witnesses came forward and filed affidavits.  One was an eyewitness who, like White, described two men approaching Appellant's house.  The other, one Willie Burgess, actually claimed to be the other gunman on that fateful morning.  Burgess stated that while the two of them stood on the porch brandishing firearms, Scott broke the glass on the front door while hollering, "I'm gon'na [sic] kill you, I'm gon'na [sic] kill you."  We find that we must reject this claim of after-discovered evidence.
>
> We find a critical flaw in Appellant's present claim.  In order to obtain relief under the PCRA after-discovered evidence, the evidence that has subsequently become available must be of such a nature that it would have changed the outcome of the trial if it had been introduced.  42 Pa. Cons. Stat. Ann. § 9543(a)(2)(vi).  Simply stated, if introduced at trial, the proposed evidence would have been attacked and discounted with Appellant's own testimony.  Appellant admitted that he was present at the crime scene and described it in great detail, including up to the moment he shot Scott.  We have reviewed Appellant's entire testimony and are struck by his complete failure to mention the presence of a second gunman.  It is utterly incredible that Appellant would fail to mention such a critical detail.  We think the jury would have been disturbed by the

> discrepancy also and would have discounted this new evidence as a result. Thus, we find that the proposed evidence would not have changed the result.

Id. (footnotes omitted).

Petitioner identifies the three Affidavits and a second gun recovered from the porch after the shooting, allegedly suppressed by the prosecution, as "new evidence" supporting his claim that he killed the victim in self-defense and, therefore, he is actually innocent of the crime of which he was convicted. It appears that the existence of the second gun (or gunman) on the porch was known by petitioner at least as of the time of trial since petitioner expected counsel to question witnesses about the gun. Moreover, even if the existence of a second gun on the porch were not disclosed as of the time of the trial, petitioner has known about it since at least June 30, 1988, when his counsel filed an amended PCHA petition raising issues regarding the second gun from the porch. Hence, evidence concerning a second gun is approximately twenty years old and not "new" for the purposes of establishing an actual innocence exception to a statute of limitations. Schlup, 513 U.S. at 324, 327.

Moreover, even if there were an "actual innocence" exception to the limitations period in Section 2244(d), a petitioner must have exercised reasonable diligence in raising his claim of actual innocence before the statute of limitations expired. See Pace v. Diguglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing . . . that he has been pursuing his rights diligently."); Hornig, 197 Fed. Appx. at 94 ("[E]ven assuming that this court were to permit equitable tolling of the AEDPA statute of limitations when a viable claim of actual innocence has been presented, [petitioner's] claim would nevertheless fail because he did not exercise reasonable diligence in pursuing his actual

innocence claim.") (not precedential); Gilyard v. Tennis, 2007 WL 201015, at *2 (E.D. Pa. Jan. 17, 2007) (same).  See also Doe v. Menefee, 391 F.3d 147, 160-62 (2d Cir. 2004) (habeas petitioner seeking tolling of statute of limitations based on actual innocence must demonstrate "reasonable diligence during the period that he seeks to have tolled"), cert. denied, 126 S. Ct. 489 (2005); Workman v. Bell, 227 F.3d 331, 342 (6th Cir. 2000) ("Thus, if a petitioner purposefully or by inadvertence lets the time run under which he could have filed his petition, he cannot file a petition beyond the statutory time, even if he claims 'actual innocence'.").

       Petitioner offers no excuse for failing to raise his claims in a timely fashion.  Petitioner learned of the second gun as early as his trial, but no later than June 1988, when appointed counsel filed an amended PCHA petition.  Petitioner had almost nine years, until April 23, 1997, to file a timely habeas petition.  This he did not do.

       Calculating the AEDPA statute of limitations using the dates of the Affidavits does not render petitioner's habeas petition timely.  The White Affidavit is dated December 19, 2000, while the Burgess and Matthews Affidavits are dated September 17, 2002.  Petitioner did not file the instant habeas petition until April, 2005, more than four years after becoming aware of the White Affidavit and two and one-half years after obtaining the Burgess and Matthews Affidavits.  Petitioner's third petition for state collateral review, filed on January 25, 2001 and dismissed as untimely on May 15, 2003 with allocatur denied by the Pennsylvania Supreme Court on February 24, 2005, was pending during and after the time petitioner obtained the Burgess and Matthews Affidavits; an untimely PCRA petition does not toll the AEDPA statute of limitations.  See Pace, 544 U.S. at 417.

Finally, neither the Affidavits nor the evidence concerning a second gun establishes petitioner's actual innocence of the crime of which he was convicted. As the Superior Court of Pennsylvania explained, petitioner's assertion that Burgess was on petitioner's porch with the victim, and therefore a threat to petitioner, is belied by petitioner's own testimony at trial. Petitioner testified at trial but never mentioned seeing a second gunman. Petitioner claims that Burgess' Affidavit indicates that he was "hiding in the shadows on petitioner's porch." (Pet.'s Br. Supp. Pet. at 15.) Burgess does not so state in his Affidavit. Id. at Ex. D.

The state court conceded that petitioner may claim that he did not see the second gunman whom petitioner described as "hiding in the shadows on Appellant's porch." The court noted, however, that "if Appellant claims he was unaware of Burgess, then his self-defense theory is not bolstered since it is axiomatic that one cannot fear and respond to an unperceived threat." Commonwealth v. Thompson, No. 1679 EDA 2003, slip op. at 7 n.10 (Pa. Super. Ct. Oct. 1, 2004). In petitioner's counseled brief in support of his habeas petition, petitioner admits that he testified that he shot the decedent as he was entering petitioner's foyer and that it was impossible for petitioner to see the second gunman. (Pet.'s Counseled Br. at 12.) Petitioner's assertions support the state court's conclusion that the presence of a second gun or a second gunman would not have bolstered petitioner's claims of self-defense since he was unaware of that additional threat and, therefore, not responding to it.

The Superior Court of Pennsylvania also noted several other inconsistencies between petitioner's testimony and the contents of the Affidavits. Petitioner never testified hearing the victim yell "I'm gon'na [sic] kill you." Moreover, according to petitioner, the victim reached for his gun only after the door was broken down and he had been confronted by

petitioner.  See also Pet.'s Counseled Br. at 12 (reaffirming that petitioner's defense at trial was that "the decedent was armed and reaching for his .357 Magnum when he was shot while entering Petitioner's home after kicking in the front door."). According to White's account, however, the victim was brandishing his gun as he kicked the door. Commonwealth v. Thompson, No. 1679 EDA 2003, slip op. at 7 n.11 (Pa. Super. Ct. Oct. 1, 2004).

Mr. Matthews stated in his Affidavit that after he saw two males walk up the steps of petitioner's house, Mr. Matthews then entered his own home. He returned outside after hearing a "loud boom sound," and saw the decedent on the ground outside along with broken glass and a "small gun." The second male ran away from the scene. See Pet.'s Counseled Pet. Ex. E (Matthews Affidavit). Mr. Matthews did not see what happened after the two males ascended the steps to petitioner's house and before petitioner shot the decedent.

The statements of the affiants do not establish that petitioner was acting in self-defense when he shot the victim. Accordingly, the "new evidence" does not establish that it is more likely than not that no reasonable juror would have convicted petitioner.

This conclusion is supported by the evidence presented at trial that petitioner did not act in self-defense. The Superior Court of Pennsylvania noted that petitioner had vowed to "get" the victim numerous times prior to the shooting. The Superior Court of Pennsylvania summarized the facts as follows:

> The facts developed at trial indicate that on July 8, 1979, Appellant and members of his family were quarreling with members of the Smith family, who resided in an adjoining home. On that day, Appellant and the victim, Claude Scott, engaged in a fight in front of the Thompson and Smith residences. The police arrived at the scene, broke up the fight and departed. A short time later, the police returned to the scene and observed Appellant carrying a sawed-off shotgun in an alley near his house. Appellant dropped the gun and fled inside his house. A police officer

15

pursued and apprehended Appellant inside his home. A second officer followed, and upon entering the home was attacked by Appellant's brother . . . who was wielding a meat cleaver. . . . As Appellant was being placed in the police wagon, the police overheard Appellant say to his brother, "That's all right. When I get out I'm going to get him. I'm going to get that mother ------." Soon thereafter, Appellant was released from police custody.

On July 9, 1979, at approximately 4:30 a.m., Appellant and several other individuals departed from Appellant's residence and travelled [sic] to the victim's car. This car was parked in front of Belinda Smith's [the victim's girlfriend] apartment building, which was located around the corner from Appellant's residence. Gwendolyn Smith, who lived in an apartment next to her sister Belinda, witnessed a group of individuals, including Appellant, break the victim's windshield. Later that morning, the victim discovered the broken windshield and called the police. The police arrived, and while the victim spoke with police, Belinda Smith walked around the corner to her mother's house. As she passed Appellant's residence, she noticed that Appellant was sitting on his front porch. . . . Appellant stated, "I broke the pussy's window. And tell him to come around. I'm going to kill him." Belinda Smith went inside her mother's home for a brief period of time, and then returned to her apartment where she saw the victim still speaking with the police.

While Belinda Smith was in her apartment, the victim drove to Appellant's house. Peter Coates, who was the brother of Belinda Smith and lived in the Smith residence next to Appellant, heard Appellant's brother shout, "get your gun, here comes [the victim]." Appellant responded, "get me the rifle." Appellant then fired two shots from inside his house. One of the bullets struck the victim in his head. Coates went outside and saw the victim lying on his back on the Appellant's porch, bleeding from a wound to the head. Coates went inside and called for an ambulance. When he came back outside, he saw Appellant's step-father near the victim, and noticed an unopened canvas bag next to the victim. Coates then went inside, came back out, and on a third viewing of the victim saw a gun on his chest.

Shortly after the shooting, Belinda Smith arrived at the scene and saw the victim lying on Appellant's porch, bleeding from a head wound. She observed an unopened canvas bag near the victim, and saw Appellant jumping over the back fence of his house. . . . Appellant entered the restaurant and informed a police officer that an individual had been shot on his porch. Appellant indicated that his step-father shot the victim. As [they] left the restaurant, they encountered Belinda Smith, who informed the officer that Appellant had shot and killed the victim. The officer then arrested Appellant.

>       Later, at the police station Appellant admitted to shooting the victim, but claimed that he acted in self-defense. At trial, Appellant contended that the victim came onto his porch, broke the windows in the front door, and reached into a canvas bag which Appellant thought contained a gun. A jury found Appellant guilty of first degree murder.

Commonwealth v. Thompson, No. 2174 PHL 1994, slip op. at 1-4 (Pa. Super. Ct. Aug. 28, 1995) (footnote omitted).

For all of these reasons, petitioner has failed to show that his "new evidence" entitles him to tolling of the AEDPA statute of limitations. Petitioner also has failed to establish that he is actually innocent of the crime of which he was convicted entitling him to relief that otherwise would be barred.

**2.    Misled by the State.**  Finally, petitioner contends that he is entitled to equitable tolling of the AEDPA statute of limitations because the prosecution misled petitioner regarding where the second gun was found and suppressed that evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).[8] Petitioner has failed to present evidence to support this claim. As summarized above, as early as the time of the trial but no later than 1988, petitioner knew that

---

[8] A claim of a Brady violation is typically raised as a ground for relief in a habeas petition. Here, petitioner alleges a Brady violation as the basis for equitable tolling. While a prosecutor's affirmative duty to disclose evidence favorable to a defendant can be traced to early twentieth century prohibitions against misrepresentation, it is predominantly associated with the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963). The Supreme Court in Kyles v. Whitley, 514 U.S. 419 (1995) provides a concise summary of the evolution of the current Brady law. In a more recent decision, the Supreme Court stated the Brady rule as follows: "There are three components to a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Not every failure to disclose favorable evidence gives rise to a constitutional violation. Kyles, 514 U.S. at 436-437. A Brady violation does not occur unless there is a reasonable probability that the suppressed evidence would have produced a different verdict. Strickler, 527 U.S. at 281.

a second gun had been discovered on the porch after the shooting.  Hence, petitioner presents no evidence that the prosecution suppressed this evidence.

Moreover, a Brady violation does not occur unless there is a reasonable probability that the suppressed evidence would have produced a different verdict.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Here, as detailed above, the Superior Court of Pennsylvania concluded that the evidence concerning a second gun on the porch would not have changed the result of petitioner's trial and, hence, no prejudice ensued from the alleged non-disclosure.  Commonwealth v. Thompson, No. 1679 EDA 2003, slip op. at 5-7 (Pa. Super. Ct. Oct. 1, 2004); Commonwealth v. Thompson, No. 02174 PHL 1994, slip op. at 5, 12 (Pa. Super. Ct. Aug. 28, 1995).  For all the above reasons, the court finds that the petition is time-barred and the statute of limitations cannot be equitably tolled.

Accordingly, the court makes the following:

### R E C O M M E N D A T I O N

AND NOW, this 17th day of April, 2007, the court respectfully recommends that the petition for a writ of habeas corpus be **DISMISSED** as time-barred by the statute of limitations, and that no certificate of appealability ("COA") be granted.[9]

BY THE COURT:

/s/  Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

---

[9] The COA should be denied because petitioner has not shown that reasonable jurists could debate whether his petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further.  See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).